CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
June 07, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DEWAYNE T. LEWIS,** ) | |
| Plaintiff, ) | Case No. 7:22-cv-00023 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **NURSE NICHOLAS MELIUS,** ) | Chief United States District Judge |
| Defendant. ) | |

## MEMORANDUM OPINION

DeWayne T. Lewis, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that Nurse Nicholas Melius acted with deliberate indifference to his serious medical needs. Melius has moved for summary judgment on the ground that Lewis failed to exhaust his administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act (PLRA). For the reasons set forth below, the motion for summary judgment, ECF No. 91, is **DENIED**.[1]

## Background

On the evening of August 29, 2021, Lewis was involved in a physical altercation with another inmate at River North Correctional Center (RNCC). Compl. ¶ 5, ECF No. 1. During the altercation, the other inmate stabbed Lewis multiple times with a sharp metal object, and Lewis sustained puncture wounds to the left side of his chest. Id.; see also Supp'l Compl. Ex. 1, ECF No. 53-1 at 1. Melius, a licensed practical nurse at RNCC, responded to the incident and observed Lewis's stab wounds. Supp'l Compl. ¶ 6, ECF No. 53. Lewis claims that even though the wounds

---

[1] Lewis has filed a motion for summary judgment on the merits of his claim of deliberate indifference. That motion will be addressed separately.

were "bleeding profusely," he was "taken to and placed in the RNCC Restrictive Housing Unit (segregation) without first receiving proper medical attention." Compl. ¶ 6. After passing out for a few hours, Lewis awoke with persistent bleeding, severe chest pain, and difficulty breathing. Id. at ¶ 7; see also Supp'l Compl. ¶ 3. At that point, Melius contacted a physician on call, and arrangements were made to transport Lewis to the emergency room at a local hospital. Supp'l Compl. Ex. 7, ECF No. 53-1 at 8.

Hospital records indicate that Lewis underwent a chest x-ray at 1:27 a.m. on August 30, 2021. Supp'l Compl. Ex. 1. After reviewing the x-ray, the examining physician determined that Lewis needed to be referred to a trauma center for additional treatment. Supp'l Compl. Ex. 4., ECF No. 53-1 at 4. The physician noted that a CT scan showed a moderate to large hemothorax on the left side of the chest wall and that Lewis would need to be transferred to a trauma center for an "emergent chest tube placement." Id. Lewis was transferred to Carilion Roanoke Memorial Hospital for further treatment. Supp'l Comp. ¶ 4.

Lewis subsequently filed suit against Melius under 42 U.S.C § 1983. Lewis claims that Melius violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide prompt and adequate medical care for his stab wounds. Id. at ¶¶ 7–11. He asserts that his injuries were "so obvious that even a lay person would [have] easily recognized the necessity for a doctor's attention" and that Melius nonetheless delayed or denied access to adequate medical treatment. Id. at ¶¶ 5, 11.

Melius has moved for summary judgment on the basis that Lewis failed to properly exhaust his administrative remedies before filing suit. The motion has been fully briefed and is ripe for decision.

## Standard of Review

Under the Federal Rules of Civil Procedure, a party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. When ruling on a motion for summary judgment, the court "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). The court "cannot weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 569 (4th Cir. 2015).

## Discussion

The PLRA provides that "[n]o action shall be brought" in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 532 (2002), and that courts have no discretion to waive the exhaustion requirement, Woodford v. Ngo, 548 U.S. 81, 85 (2006). However, because "failure to exhaust is an affirmative defense under the PLRA," a defendant bears the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones v. Bock, 549 U.S. 199, 216 (2007).

The Supreme Court has concluded that "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93. This "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. at 90

3

(internal quotation marks and citation omitted). "Proper exhaustion," therefore, "demands compliance with an agency's deadlines and other critical procedural rules." Id.

Although the PLRA's exhaustion requirement is "strict," it "does not operate as an absolute bar to prison litigation in federal court." Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022). Instead, "it sets forth a built-in exception, specifying that a prisoner need not exhaust remedies if they are not available." Id. (internal quotation marks omitted) (citing Ross v. Blake, 578 U.S. 632, 635–36 (2016)). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). In other words, if "an administrative remedy, although officially on the books, is not capable of use to obtain relief," the exhaustion requirement "does not come into play." Ross, 578 U.S. at 643.

## I.     The Applicable Grievance Process

"Prisons in Virginia must follow the Virginia Department of Corrections Offender Grievance Procedure, which provides a basic grievance process and timeline." Custis v. Davis, 851 F.3d 358, 359 (4th Cir. 2017). The grievance process is described in Operating Procedure (OP) 866.1. "Grievable issues" include "[c]onditions of care under the authority of the DOC" and "[a]ctions of staff, contractual staff, volunteers, and interns" that affect an inmate personally. OP 866.1 § III(B), eff. Jan. 1, 2021, Def's Mem. Supp. M. Summ. J. Ex. B, ECF No. 92-2.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally before filing a regular grievance. If a verbal complaint is not resolved to the satisfaction of an inmate, the inmate may submit a written complaint. Id. § (I)(D). The policy states that the written

complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident." Id.

If an inmate is dissatisfied with the response to a written complaint, the inmate may then file a regular grievance. Id. Unless an exception applies, the inmate "must deliver the original [regular grievance] with attached document(s) to the Grievance Mailbox within 30 days from the original incident or discovery of the incident." Id. § (III)(B)(5). "Exceptions to the 30-day timeline for filing" include circumstances in which "[t]he delay is beyond the offender's control," such as delay resulting from "injury" or "sickness." Id. In such instances, an inmate "has five days to file their grievance once the reason for delay is no longer valid." Id.

If it is determined that a regular grievance does not satisfy the intake criteria, grievance staff must indicate the reason for rejection and return the grievance to the inmate within two working days. Id. § (III)(C). If an inmate wishes to appeal the intake decision, the inmate "must submit the original [regular grievance] to the Regional Ombudsman at the address posted on each unit's bulletin board within five days of receipt of the returned grievance." Id. § (IV)(D). "There is no further review or appeal of an intake decision following a Regional Ombudsman disposition." Id.

If it is determined that a regular grievance satisfies the intake criteria, "staff must accept the grievance and log it into VACORIS using the received date." Id. § (III)(C). When a regular grievance is accepted and logged into VACORIS, the "Facility Unit Head" or "Assistant Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. Id. § (III)(F). If an inmate is dissatisfied with the response, the inmate may appeal to Level II, where the appeal is reviewed by the Regional Administrator or another designated official. Id. § (IV)(C). OP 866.1

5

explains that an inmate satisfies the requirements for exhausting administrative remedies only when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." Id. § (V)(B).

### II.    Lewis's Exhaustion Efforts

Relying on exhibits attached to Lewis's complaint, Melius argues that Lewis failed to comply with the deadlines set forth in OP 866.1 and therefore failed to properly exhaust his administrative remedies. On October 11, 2021, 43 days after the stabbing incident, Melius filed a written complaint asserting that "the male nurse . . . didn't properly look at [his stab] wounds before [he] was taken/put into segregation" and that he had to be hospitalized after blood and fluid collected near one of his lungs. Written Complaint, ECF No. 1-1 at 5. Nurse L. Davis responded to the written complaint on October 22, 2021. Id. Lewis then completed and signed a regular grievance on October 27, 2021, in which he again alleged that he did not receive proper medical treatment before being placed in segregation immediately following the stabbing incident. Regular Grievance, ECF No. 1-1 at 6. In the space provided on the written complaint and the regular grievance, Melius alleged that the delay in filing the administrative remedy forms was "beyond [his] control." ECF No. 1-1 at 5, 6. He emphasized that his "injuries were serious," that he was housed in the medical unit "for healing" after being released from the hospital, and that he was "then taken to [segregation] while still healing." Id. Although the second page of the regular grievance is not attached to the complaint, Lewis alleges that the regular grievance was rejected at intake on the basis that it was untimely. Compl. ¶ 10. Based on this allegation and the forms accompanying the complaint, Melius contends that Lewis did not properly exhaust his administrative remedies.

In response to the motion for summary judgment, Lewis argues that circumstances beyond his control prevented him from complying with the 15-day deadline for filing a written complaint and the 30-day deadline that typically applies to regular grievances. This argument is supported by sworn allegations in the complaint and sworn statements in Lewis's response in opposition to the motion for summary judgment. See Goodman v. Diggs, 986 F.3d 493, 499 (4th Cir. 2021) (concluding that the plaintiff's "original and first amended complaints, which were verified and based on [the plaintiff's] personal knowledge," were "the equivalent of opposing affidavits" on summary judgment). In the complaint, Lewis alleges, under penalty of perjury, that he was housed in the medical unit and the restrictive housing unit after being released from the hospital, that he was still "very weak and recovering from serious stab wounds," and that "RNCC correctional officers repeatedly refused to provide [him] with the proper grievance forms" while he was in the restrictive housing unit. Compl. ¶ 10. In his sworn response in opposition, Lewis states that he "spent a few weeks in the medical department recovering from [his] injuries" before being moved to the restrictive housing unit, that he was "still dealing with [his] injuries" while housed in the restrictive housing unit, and that he was not "allowed to have any writing material" while housed in the medical unit or the restrictive housing unit. Pl.'s Resp. Opp'n ¶¶ 15–16, ECF No. 98. Lewis emphasizes that an exception to the 30-day deadline for submission of regular grievances applies when "injury" or other circumstances "beyond the offender's control" prevent compliance with the deadline, and he asserts that he "wasn't able to take action sooner" because of his "injuries" and "not having access to the needed material." Id. at ¶¶ 18, 20.

Viewing the record in the light most favorable to Lewis, the court concludes that a genuine dispute of material fact exists as to whether circumstances beyond Lewis's control prevented him

from filing a regular grievance within 30 days of the incident giving rise to this action, such that an exception should have been made pursuant to OP § III(B)(5). See Grantham v. Watson, No. 2:09-cv-00060, 2010 WL 1753765, at *4 (W.D. Va. Apr. 30, 2010) (noting that the 30-day grievance deadline is subject to a "broad exception" that "permits late filing in instances beyond the offender's control" and that "denial of access to forms by correctional officers would be an instance beyond [an inmate's] control"). For similar reasons, the court concludes that a genuine dispute of material fact exists as to whether the grievance process was actually "available" to Lewis during the 30-day period at issue. As previously noted, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. Courts have held that "administrative remedies are 'unavailable' when (1) an inmate's failure to file for the administrative remedy within the time allowed results from a medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief." Rucker v. Giffen, 997 F.3d 88, 94 (2d Cir. 2021); see also Smith v. Andrews, 75 F.4th 805, 809 (8th Cir. 2023) (concluding that "administrative remedies are 'unavailable' to an inmate under the PLRA when (1) the inmate was unable to file a timely grievance due to physical or mental incapacity; and (2) the administrative system's rules do not accommodate the condition by allowing a late filing"). Courts have also held that "when prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." Hill v. O'Brien, 387 F. App'x 396, 400 (4th Cir. 2010) (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)); see also Marella v. Terhune, 562 F.3d 983, 985 (9th Cir. 2009) (explaining that "no remedy was available for [an] inmate to exhaust properly" if "he was unable

8

to file his grievance timely because he did not have access to the necessary forms and did not have the ability to complete them during the [applicable] filing period").

Here, Lewis has repeatedly asserted that the nature and extent of his injuries hindered his ability to utilize the grievance process any sooner, as did his alleged inability to access grievance forms and writing materials until after he was released from the restrictive housing unit. Although Melius's reply brief challenges the credibility of Lewis's assertions, the court "cannot weigh the evidence or make credibility determinations" at this stage of the proceedings. Jacobs, 780 F.3d at 569; see also Pumphrey v. Coakley, 684 F. App'x 347, 349 (4th Cir. 2017) (reversing a grant of summary judgment on the issue of exhaustion based on the determination that the district court improperly made a credibility determination). Instead, the court is required to view the evidence in the light most favorable to Lewis and draw all reasonable inferences in his favor. Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019). Based on the current record, Melius is not entitled to summary judgment on the exhaustion defense.

## Conclusion

For the reasons stated, Melius's motion for summary judgment, ECF No. 91, is **DENIED**. Melius shall have 30 days to file any motion for summary judgment addressing the merits of Lewis's Eighth Amendment claim. An appropriate order will be entered.

Entered: June 6, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.06.06 16:54:43
-04'00'

Michael F. Urbanski
Chief United States District Judge

9