CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
February 26, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DEWAYNE T. LEWIS,    ) | |
|     Plaintiff,    ) | Case No. 7:22-cv-00023 |
| ) | |
| v.    ) | |
| ) | By: Michael F. Urbanski |
| NURSE NICHOLAS MELIUS,    ) | Senior United States District Judge |
|     Defendant.    ) | |

## MEMORANDUM OPINION

DeWayne T. Lewis, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Nurse Nicholas Melius. Lewis claims that Melius failed to provide adequate medical treatment after Lewis was stabbed by another inmate. The case is presently before the court on Melius's second motion for summary judgment. ECF No. 113. For the reasons set forth below, the motion is **GRANTED**.

### I.    Background

**A.    Lewis's Verified Complaint**

At all times relevant to this action, Lewis was incarcerated at River North Correctional Center (RNCC) in Independence, Virginia. In his verified complaint, Lewis alleges that he was involved in a physical altercation with another inmate at approximately 7:30 p.m. on August 29, 2021, during which the other inmate stabbed him multiple times with a sharp metal object. Compl., ECF No. 1, ¶ 5. Defendant Melius, a licensed practical nurse at RNCC, responded to the incident. Supp'l Compl., ECF No. 53, ¶ 2. Lewis claims that he was "taken to and placed in the RNCC Restrictive Housing Unit (segregation) without first receiving proper medical attention even though [he] was bleeding profusely from various stab wounds." Compl. ¶ 5.

After sleeping for several hours, Lewis "awoke with extreme and severe chest pains and difficulty . . . breathing." Id. ¶ 7. He was ultimately "rushed to the hospital . . . to receive proper treatment for his wounds." Id. ¶ 8; see also Supp'l Compl. ¶ 4 ("After complaining about my shortness of breath and bleeding, I was then transferred to Twin County Regional Healthcare Emergency Room 6-7 hours after my incident, then later rushed to Carilion Hospital in Roanoke . . . .").

**B.    Melius's Evidence**

In support of the pending motion for summary judgment, Melius submitted his own declaration, along with certified copies of Lewis's medical records.[1] The declaration indicates that on August 29, 2021, Melius responded to a report that an inmate had been injured in an altercation. Melius Decl., ECF No. 114-1, ¶ 3. He subsequently encountered Lewis, who appeared to have three stab wounds. Id. ¶ 4. During the initial encounter, Lewis "refused to allow [Melius] to complete a thorough physical examination or obtain vital sights." Id. Nonetheless, according to Melius, Lewis "did not appear to be in any acute or life-threatening physical distress." Id. Melius "treated his wounds, and correctional staff directed him to the [Restrictive Housing Unit] for further observation." Id.

Melius's initial encounter with Lewis is documented on a Health Services Complaint and Treatment Form completed at 7:45 p.m. on August 29, 2021. ECF No. 114-2 at 18. The notes indicate that Lewis complained of being stabbed on his left side and that three stab wounds were observed in the left axillary region. Id. The notes also indicate that Lewis refused

---

[1] The medical records are docketed as part of ECF Nos. 114-2 and 114-3. The court will cite to the medical records using the pagination assigned by the CM/ECF system.

to have his vital signs taken and that he exhibited no difficulty breathing. Id. Melius noted that Lewis's wounds were cleaned and secured with Steri-Strips before he was released to security for housing and that the wounds were not bleeding at that time. Id.

Approximately three and a half hours later, Melius received a second report concerning Lewis and responded to the Restrictive Housing Unit. Melius Decl. ¶ 5. During the second encounter, Lewis allowed Melius to check his vital signs and perform a physical examination. Id. ¶ 6. Melius saw that the wounds were bleeding, and Lewis complained of shortness of breath. Id. ¶ 7. Melius cleaned the wounds, reapplied Steri-Strips, and contacted the on-call physician regarding the situation. Id.; see also ECF No. 114-2 at 18. The physician ordered that Lewis be transported to the hospital for further evaluation and treatment. Melius Decl. ¶ 7.

Records from Twin County Regional Hospital (Twin County) in Galax, Virginia, indicate that Lewis arrived at the hospital at approximately 12:20 a.m. on August 30, 2021. ECF No. 114-3 at 3. The attending physician noted that Lewis had "[t]hree stab wounds to [his] left chest" with Steri-Strips in place and that bleeding was "controlled." Id. at 10. The physician also noted that Lewis was complaining of shortness of breath and pain upon inspiration. Id. A physical examination revealed no acute distress, regular heart rate and rhythm, normal orientation, and stable vital signs. Id. at 13–14, 21.

Lewis underwent a chest CT scan at 1:52 a.m., approximately an hour and a half after he arrived at the hospital. Id. at 26. The CT scan revealed a "miniscule pneumothorax with diffuse infiltrates and volume loss of the left lung" and a "large left hemothorax."[2] Id. After

---

[2] A pneumothorax is also known as "a collapsed lung," and a hemothorax is "a collection of blood in

3

reviewing the CT scan findings, the attending physician elected to transfer Lewis to Carilion Roanoke Memorial Hospital (Roanoke Memorial) for further treatment. Id. at 21. The physician included the following comments in a progress note:

> Vital signs are stable but he is slightly tachypneic and complaining of shortness of breath. Chest imaging shows the left lung to be hazy but I do not see a pneumothorax. I reviewed this imaging myself. CT scan shows a moderate to large size he hemothorax on the left side. Do not see a pneumothorax. Since patient's vital signs are stable and incident occurred 6 hours ago that he needs an emergent chest tube placement. Will transfer to Trauma Center for definitive care.

Id. (quoted as written).

A hospital transfer record indicates that Lewis left Twin County at 3:35 a.m. on August 30, 2021. Id. at 40. After Lewis was admitted to Roanoke Memorial, a chest tube was inserted on his left side and cardiology was consulted for complaints of chest pain. ECF No. 114-2 at 31. He remained at Roanoke Memorial until September 2, 2021, when he was discharged into the custody of the Virginia Department of Corrections. The hospital discharge summary indicates that Lewis was "monitored in the ICU with conservative management," that he did not require "further invasive procedures," and that the chest tube was removed after the hemothorax stabilized. Id. at 31.

After returning to RNCC, Lewis remained in a medical isolation cell for observation for approximately two weeks. Id. at 10–17. Melius did not examine or treat Lewis during that time. See Melius Decl. ¶ 7 ("I was not involved in Mr. Lewis's medical care after he was

---

the space between the chest wall and the lung (the pleural cavity)." See Collapsed lung (pneumothorax), U.S. National Library of Medicine: Medline Plus, https://medlineplus.gov/ency/article/000087.htm (last visited Feb. 21, 2025); Hemothorax, U.S. National Library of Medicine: Medline Plus, https://medlineplus.gov/ency/article/000126.htm (last visited Feb. 21, 2025).

4

transported to [Twin County]."). In his declaration, Melius avers that he was not aware that Lewis had sustained a left pneumothorax or hemothorax, and that "[t]he physical examination [he] was able to perform during [his] encounters with [Lewis] did not reveal or disclose that he had sustained a pneumothorax or hemothorax." Id. ¶ 12. Melius notes that those conditions were not identified until after Lewis underwent more advanced testing, including the CT scan, at Twin County. Id. ¶ 9.

## II.    Procedural History

Lewis commenced this action on January 20, 2022, by filing a form complaint under 42 U.S.C. § 1983 against several defendants, including John Doe. On July 22, 2022, the complaint was amended to add Nurse Melius in place of John Doe and to remove other defendants. ECF No. 42. Lewis then obtained leave to amend the complaint to include additional allegations against Melius. ECF No. 45. Based on the allegations in the original complaint and the supplemental complaint, Lewis claims that Melius violated the Eighth Amendment "by failing to provide proper medical assistance immediately after [Lewis] was stabbed." Compl. at 5; see also Supp'l Compl. at 3 (asserting that the delay in providing adequate medical treatment violated the Eighth Amendment).

Melius initially moved for summary judgment on the basis that Lewis failed to exhaust his administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act. The court denied that motion on June 7, 2024, and gave Melius 30 days to file a second motion for summary judgment addressing the merits of Lewis's Eighth Amendment claim. ECF No. 106. Melius subsequently requested and received an extension of time to file a second motion. ECF No. 110.

5

The case is now before the court on Melius's second motion for summary judgment. ECF No. 113. Lewis filed an "affidavit to rebut" the motion for summary judgment in which he argues that the motion should be denied. ECF No. 121. The motion for summary judgment is ripe for adjudication.

### III. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Henry v. Purnell, 652 F.3d 524, 548 (4th Cir. 2011)).

When ruling on a motion for summary judgment, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Id. at 312. The court may not "weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015). "To survive summary judgment, 'there must be evidence on which the jury could reasonably find for the [nonmovant].'" Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

6

"However, it is well-established that a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the [factual] allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (internal quotation marks omitted); see Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Conclusory allegations in a verified complaint are insufficient to survive summary judgment. See Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.").

### III. Discussion

Lewis claims that Melius violated his rights under the Eighth Amendment by failing to provide adequate medical treatment after he was stabbed by another inmate. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a prison official or healthcare provider "demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id.

7

A claim of deliberate indifference has two elements. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The plaintiff must show that he had serious medical needs (the objective element) and that a defendant acted with deliberate indifference to those needs (the subjective element). Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021). In this case, Melius does not challenge whether Lewis's medical needs were objectively serious. Instead, he argues that Lewis is unable to show that he acted with deliberate indifference to Lewis's medical needs.

To satisfy the subjective element, an inmate must establish that the defendant "subjectively knew of and disregarded an excessive risk to the inmate's health or safety." Id. "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Jackson, 775 F.3d at 178. To establish an Eighth Amendment violation, "it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id.

The mere fact that an inmate received "some treatment" for a condition does not necessarily mean that the inmate received "constitutionally adequate treatment." De'Lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013). However, a mere disagreement between an inmate and prison medical staff over an inmate's proper medical care is generally insufficient to establish deliberate indifference. Stevens v. Holler, 68 F.4th 921, 933 (4th Cir. 2023); Jackson, 775 F.3d at 178. To find a defendant liable, "the treatment given must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hixson, 1 F.4th at 303 (internal quotation marks omitted).

8

Applying these principles, the court concludes that Melius is entitled to summary judgment. There is insufficient evidence from which a reasonable jury could find that Melius actually knew of and disregarded an excessive risk to Lewis's health or safety, or provided medical care that was so grossly inadequate or incompetent as to shock the conscience.

The institutional medical records indicate that Melius observed three stab wounds on Lewis's left side following the altercation with another inmate and that Melius cleaned and bandaged the wounds before correctional staff moved Lewis to the Restrictive Housing Unit. The records also indicate that Lewis refused to have his vital signs taken during the initial encounter and that he exhibited no difficulty breathing at that time. When Lewis reported having difficulty breathing a few hours later, in addition to uncontrolled bleeding, he allowed Melius to check his vital signs, and Melius cleaned and rebandaged the stab wounds and consulted with the on-call physician. At that point, Lewis was transported to Twin County for further evaluation and treatment, where medical staff found that his vital signs were stable, that the bleeding was controlled, and that he was in no acute distress. It was not until a CT scan was performed an hour and a half after Lewis arrived at Twin County that he was found to have a small pneumothorax and a large hemothorax that required further treatment. There is no evidence that Melius, a licensed practical nurse, had "actual subjective knowledge" of either condition or any "excessive risk" posed by his actions or inactions. Jackson, 775 F.3d at 178. To the extent that Lewis suggests that Melius should have monitored him more closely after he was stabbed, this argument sounds in negligence, not deliberate indifference. See Ford v. Hooks, 108 F.4th 224, 230 (4th Cir. 2024) ("Deliberate indifference is a very high standard, and a showing of mere negligence will not meet it.") (internal quotation marks omitted);

9

Griffith v. Franklin Cnty., 975 F.3d 554, 573 (6th Cir. 2020) ("Even if [Nurse] Sherrow was negligent in failing to take more aggressive steps in monitoring Griffith, that would only constitute a claim of medical malpractice that lies beyond the Constitution's reach.").

For similar reasons, the court concludes that no reasonable jury could find that the delay in treating Lewis's chest conditions was attributable to deliberate indifference on the part of Melius. Although "[t]he necessary showing of deliberate indifference can be manifested by . . . intentionally denying or delaying medical care," Formica v. Aylor, 739 F. App'x 754, 755 (4th Cir. 2018) (alterations omitted), there is no evidence that Melius purposefully delayed contacting the on-call physician or sending Lewis to the hospital, or that Melius "subjectively recognized" that a substantial risk of serious harm existed "and that [his] actions were inappropriate in light of that risk," Moss v. Harwood, 19 F.4th 614, 624 (4th Cir. 2021). As noted above, the medical records indicate that Lewis exhibited no difficulty breathing when Melius initially cleaned and bandaged his stab wounds. When Lewis complained of shortness of breach and uncontrolled bleeding a few hours later, Melius promptly contacted the on-call physician and arranged for Lewis to be taken to the hospital. Even if hindsight suggests that the physician should have been called sooner, the record does not support a finding of deliberate indifference. See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 309 (4th Cir. 2004) ("As we often have made clear, the question in deliberate indifference cases is not whether the officials could have taken additional precautions—almost invariably, with the benefit of 20/20 hindsight, there are additional precautions that could have been taken—but whether they "disregarded an excessive risk to . . . . health or safety'.") (citing Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (rejecting as "impermissible 20/20 hindsight" the contention that

10

officers should have taken a detainee to a medical facility); <u>Schaub v. VonWald</u>, 638 F.3d 905, 915 (8th Cir. 2011) ("Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision.") (internal quotation marks omitted); <u>see also</u> <u>Moskos v. Hardee</u>, 24 F.4th 289, 297 (4th Cir. 2022) (emphasizing that an Eighth Amendment violation requires "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" and that "[n]ot all medical delays . . . will meet this standard").

## IV.  Conclusion

For the reasons stated, the court concludes that there is no genuine dispute as to any material fact and that Melius is entitled to summary judgment on the merits of Lewis's Eighth Amendment claim. Accordingly, Melius's second motion for summary judgment, ECF No. 113, is **GRANTED**.

Entered: February 25, 2025

Michael F. Urbanski
U.S. District Judge
2025.02.25 11:15:40
-05'00'

Michael F. Urbanski
Senior United States District Judge